UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

FRESH ALTERNATIVES, LLC,                           Chapter 11

    Debtor.                                        Case No.: 8:19-bk-05842

_____/

**DEBTOR-IN-POSSESSION'S EXPEDITED MOTION FOR ENTRY
OF AN ORDER AUTHORIZING REJECTION OF LEASE BETWEEN
CASTO-OAKBRIDGE VENTURE, LTD. AND FRESH ALTERNATIVES, LLC AND
REJECTION OF EXECUTORY CONTRACT BETWEEN WINDSTREAM
COMMUNICATIONS, LLC AND FRESH ALTERNATIVES, LLC
<u>EFFECTIVE JULY 1, 2019</u>**

**\*\* Expedited Hearing Requested Pursuant to Local Rule 2081-1(f) \*\***

<u>**Basis for Expedited Relief**</u>

**The Debtor's ability to preserve its business and ultimately reorganize will be adversely affected if it is unable to reject its commercial lease and internet service contract. Therefore, the Debtor respectfully requests that this motion be set for hearing on an expedited basis on or before July 1, 2019.**

Debtor-in-Possession, Fresh Alternatives, LLC (the "<u>Debtor</u>"), by and through its undersigned counsel, pursuant to 11 U.S.C. §§ 105 and 365, hereby files this *Emergency Motion for Entry of an Order Authorizing Rejection of Lease between Casto-Oakbridge Venture, Ltd. and Fresh Alternatives, LLC and Rejection of Executory Contract between Windstream Communications, LLC and Fresh Alternatives, LLC Effective July 1, 2019*, and in support thereof, respectfully states as follows:

<u>**JURISDICTION**</u>

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and (b), 1334(a) and (b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2.    The statutory predicate for the relief requested are 11 U.S.C. §§ 105 and 365.

**BACKGROUND**

3. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 20, 2019 (the "Petition Date").

4. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is operating its business and managing its affairs as debtor-in possession. As of the date hereof, no trustee, examiner, or statutory committee has been appointed in these Chapter 11 cases.

5. As of the Petition Date the Debtor has six restaurant locations in Florida. Prior to the Petition Date, the Debtor abandoned several locations that were not profitable, and has been in litigation with two landlords.

*Casto-Oakbridge Venture, Ltd. Lease*

6. Prior to the Petition Date, the Debtor entered into a Lease (the "Initial Lease") with Casto-Oakbridge Venture, Ltd. (the "Landlord") for the premises located at Space N-219 at 1476 Town Center Drive, Lakeland, Florida 33803 in the Lakeside Village Shopping Center consisting of 4,729 square feet (the "Leased Premises") where the Debtor operates its corporate headquarters. A true and correct copy of the Initial Lease is attached hereto as **Exhibit "A."**

7. Prior to the Petition Date, the Debtor elected its renewal option and negotiated terms for an amendment to the Initial Lease (the "Amended Lease") that downsized the rentable area due to the cost of maintaining the Initial Lease. The Amended Lease, entered into on May 9, 2017, reduced the rentable area to 2,655 square feet (the "Reduced Premises") effective as of September 1, 2017. Debtor currently operates its corporate headquarters from the Reduced Premises. A true and correct copy of the Amended Lease is attached hereto as **Exhibit "B."**

8. Pursuant to the terms of the Amended Lease, the Debtor is required to make monthly payments in the amount of approximately $4,425.00. The Amended Lease is not set to expire until January 31, 2021.

9. Debtor has secured an alternative office space within which to operate its corporate headquarters located at 1857 North Crystal Lake Drive in Lakeland, Florida for $700.00 per month on a month-to-month basis. The Debtor believes that this non-binding sublet is sufficient for their downsized needs and will allow the Debtor to operate in a more streamlined manner.

### *Agreement for Service with Windstream Communications, Inc.*

10. On June 22, 2016, Debtor entered into a five (5) year Agreement for Service (the "Service Agreement") with EarthLink, Inc. n/k/a Windstream Communications, Inc. ("Windstream") for phone, internet and cable services for both its corporate headquarters and restaurant locations. A copy of the Service Agreement is attached hereto as **Exhibit "C."**

11. The Service Agreement provided a downturn provision whereby Debtor could elect the option of canceling a percentage of its contracted services. Prior to the Petition Date, Debtor elected to utilize the downturn provision after it abandoned multiple restaurant locations. The addendum to the Service Agreement was memorialized in an Addendum to Agreement for Service (the "Addendum") entered into on April 3, 2017. A copy of the Addendum to is attached hereto as **Exhibit "D."**

12. Additionally, due to Windstream misquoting the Debtor on service capabilities for several particular restaurant locations, the Debtor and Windstream entered into two additional Agreements for Service ("Additional Agreements"), entered into on September 27, 2016 and March 30, 2017, attached hereto as **Composite Exhibit "E."**

13. As of the Petition Date, however, the Debtor is still contractually obligated to pay Windstream for two (2) closed restaurant locations, Fort Meyers and Winter Park. The Service Agreement, Addendum and Additional Agreements shall hereinafter be referred to collectively as the "Windstream Agreements".

14.     Pursuant to the terms of the Windstream Agreements, Debtor is required to pay approximately $7,900 per month. The Windstream Agreements are not set to expire until January, 2022[1].

15.     Notwithstanding the locked-in payments for services at several closed restaurant locations, Windstream's services are costly, and Debtor has found less expensive phone and internet services from other providers that better suit the Debtor's needs. Additionally, Debtor no longer requires the upgraded packages contracted under the Windstream Agreements, which includes a managed network for firewall and switches. Prior to the Petition Date, Debtor attempted to cancel the managed network services to no avail as Debtor only requires phone and internet at this time.

### RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED

16.     The Debtor no longer wishes to operate its corporate headquarters in the Reduced Premises due to the cost of maintaining the Amended Lease, and Debtor has determined that the costs of continuing the Amended Lease on a going forward basis outweighs the benefit to the Debtor and the Debtor's estate. The Debtor can save money for the estate by operating its corporate headquarters from sublet-ed office space that will adequately serve the Debtor's needs with no long-term commitment. The Debtor also seeks to reject the Windstream Agreements as the plan is too expensive and excessive for Debtor's needs and requires payment for contracted services at closed restaurant locations. Debtor wishes to secure a replacement phone and internet provider that aligns with its current needs and budget. Therefore, the Debtor requests the entry of an Order authorizing the Debtor to reject to the Amended Lease and Windstream Agreements effective July 1, 2019 pursuant to 11 U.S.C. § 365(a).

---

[1] While the Service Agreement was executed on June 22, 2016, the services did not begin until January 2017 due to complications experienced by Windstream.

17. Section 365(a) of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (2010). Section 1107 of Code makes § 365(a) applicable to the Debtor. *See* 11 U.S.C. § 1107(a) (conditionally granting a debtor-in-possession all the rights and powers of a trustee).

18. Although the Bankruptcy Code does not provide a standard for approval of a debtor's assumption or rejection of executory contracts and unexpired leases, courts have uniformly deferred to the business judgment of the debtor. *See, e.g., In re Gardinier, Inc.*, 831 F.2d 974, 975 (11th Cir. 1987); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Taylor*, 913 F.2d 102 (3d Cir. 1990); *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36 (2d Cir. 1989). The business judgment test is not a strict standard and merely requires a showing that either assumption or rejection of the contract at issue will benefit the debtor's estate. *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd sub nom, Bildisco & Bildisco*, 465 U.S. 513. As long as a debtor's decision to reject is a reasonable exercise of its business judgment, authorization to reject is appropriate. *Bildisco & Bildisco*, 465 U.S. at 523-24.

19. The Debtor filed for bankruptcy in order to restructure its debts and explore opportunities to cut expenses. Based on the continued cost of maintaining the Amended Lease and Windstream Agreements, in the exercise of the Debtor's sound business judgment, the Debtor asserts that rejecting the Amended Lease and Windstream Agreements is in the best interest of the estate so as to avoid additional unnecessary administrative expenses to the estate.

20. Additionally, the Debtor requests that the Court schedule the deadline for filing any proof of claim for damages arising from the rejection of the Amended Lease and Windstream

Agreements on or before thirty (30) days after the entry of an Order granting the instant motion.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order: i) granting the instant motion; ii) approving the Debtor's rejection of the Amended Lease and the Windstream Agreements effective July 1, 2019 pursuant to 11 U.S.C. § 365(a); iii) providing that any proof of claim for damages arising from the rejection of the Amended Lease and Windstream Agreements described herein be filed with the Court on or before thirty (30) days after the entry of an Order granting the instant motion; and iv) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

**SHRAIBERG, LANDAU & PAGE, P.A.**
Proposed Attorneys for Debtor
2385 NW Executive Center Drive, Suite 300
Boca Raton, FL 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
           agross@slp.law

By:  /s/ Bradley S. Shraiberg
       Bradley S. Shraiberg, Esq.
       Florida Bar No. 121622
       Alicia Z. Gross, Esq.
       Florida Bar No. 0103210

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by notice of electronic filing via CM/ECF to all parties registered to receive such notices in this case on this the 24th day of June, 2019.

By:  /s/ Bradley S. Shraiberg
       Bradley S. Shraiberg