UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Fresh Alternatives, LLC,                              Chapter 11

      Debtor.                                    Case No.: 19-bk-05842-MGW

_____/

### DEBTOR-IN-POSSESSION'S *EXPEDITED* MOTION FOR ENTRY OF ORDER AUTHORIZING REJECTION OF COMMERCIAL LEASE WITH LUCAS CLERMONT LIMITED PARTNERSHIP AND EXECUTORY CONTRACT WITH PITNEY BOWES INC.

**\*\* Expedited Hearing Requested Pursuant to Local Rule 2081-1(f) \*\***

### Basis for Expedited Relief

**The Debtor's ability to preserve its business and ultimately reorganize will be adversely affected if it is unable to reject its commercial lease and postage machine lease agreement, and avoid incurring additional and unnecessary administrative expenses. Therefore, the Debtor respectfully requests that this motion be set for hearing on an expedited basis on or before August 1, 2019.**

Debtor-in-Possession, Fresh Alternatives, LLC (the "Debtor"), by and through its undersigned counsel, hereby files this *Expedited Motion for Entry of Order Authorizing Rejection of Commercial Lease with Lucas Clermont Limited Partnership and Executory Contract with Pitney Bowes Inc.* (the "Motion"), and in support thereof, respectfully states as follows:

### JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and (b), 1334(a) and (b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a). The statutory predicate for the relief requested are 11 U.S.C. §§ 105 and 365.

## BACKGROUND

2.      On June 20, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").  Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as a debtor-in possession.  As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.

3.      The Debtor is in the business of providing food services, including casual restaurants, online ordering and catering delivery.  As of the Petition Date, the Debtor had six restaurant locations in Florida.  Prior to the Petition Date, the Debtor abandoned several locations that were not profitable, and has been in litigation with two landlords.

### *Lease Agreement with Lucas Clermont Limited Partnership*

4.      The Debtor is a party to an unexpired lease agreement, as amended and extended, for approximately 4,800 square feet of commercial space located at 1754 FL-50, Clermont, FL 34711 (the "Clermont Premises") in a shopping center commonly referred to as the Clermont Town Center (the "Clermont Lease").  The landlord is Lucas Clermont Limited Partnership (the "Landlord").  The Clermont Lease expires on April 30, 2022.  The Debtor operates a restaurant in the Clermont Premises.

5.      The Debtor and Landlord entered into the original lease on or about October 26, 1999, an amendment to lease agreement on January 25, 2000, a second amendment to lease agreement on November 15, 2004, a lease modification agreement no. 3 dated on or about April 29, 2010, a lease modification agreement no. 4 on December 1, 2010, and a lease modification agreement no. 5 on November 16, 2016  (the "Fifth Lease Amendment").  A copy of the Fifth Lease Amendment is attached hereto as **EXHIBIT A**.

6.      The Fifth Lease Amendment provides *inter alia* that: i) the Debtor exercised an option to extend the lease term by five years, through April 30, 2022, and ii) the rent for the period of May 1, 2017 through April 30, 2022 is $5,600.00 per month.

7.      The Debtor seeks to reject the Clermont Lease, effective as of July 31, 2019 (the "Rejection Date") because the restaurant it has operated in the Clermont Premises is not profitable and does not generate net revenue for the Debtor.   The Debtor intends to cease operations in the Clermont Premises by July 27, 2019, and surrender the Clermont Premises and return the keys to the Landlord by July 31, 2019.   For these reasons, the Debtor has determined that, based on its sound business judgment, it would be in the best interests of the Debtor and its estate to reject the Clermont Lease as of the Rejection Date.

### *Lease Agreement with Pitney Bowes Inc.*

8.      The Debtor is party to a postage machine lease agreement with Pitney Bowes Inc. (the "Pitney Bowes Lease").  A copy of the Pitney Bowes Lease is attached hereto as **EXHIBIT B**. The Debtor signed the Pitney Bowes Lease on April 16, 2018, and such lease provides for monthly payments of $35.000 for a period of 24 months.  The Debtor no longer needs the postage machine because it has downsized and streamlined its operations, and purchases stamps directly from the post office.  In addition, the postage machine is not useful for the Debtor because it lacks Wi-Fi connection capabilities.  Rather than continue to incur and pay for administrative expenses under the Pitney Bowes Lease for a postage machine that is not utilized by the Debtor, the Debtor seeks to reject the Pitney Bowes Lease.  For these reasons, the Debtor has determined that, based on its sound business judgment, it would be in the best interests of the Debtor and its estate to reject the Pitney Bowes Lease as of the Rejection Date.

## BASIS FOR RELIEF REQUESTED

9.     Although the Bankruptcy Code does not provide a standard for approval of a debtor's assumption or rejection of executory contracts and unexpired leases, courts have uniformly deferred to the business judgment of the debtor.  *See, e.g., In re Gardinier, Inc.*, 831 F.2d 974, 975 (11th Cir. 1987); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Taylor*, 913 F.2d 102 (3d Cir. 1990); *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36 (2d Cir. 1989).  The business judgment test is not a strict standard and merely requires a showing that either assumption or rejection of the contract at issue will benefit the debtor's estate.  *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd sub nom, Bildisco & Bildisco*, 465 U.S. 513.  As long as a debtor's decision to reject is a reasonable exercise of its business judgment, authorization to reject is appropriate.  *Bildisco & Bildisco*, 465 U.S. at 523-24.

10.     With respect to the Clermont Lease, the Debtor seeks to reject such lease and surrender the Clermont Premises and return the keys to the Landlord by July 31, 2019.  The restaurant the Debtor has operated in the Clermont Premises is not profitable.  As such, the Debtor believes that the decision to reject the Clermont Lease is a sound exercise of its business judgment and is in the best interest of the Debtor's estate.

11.     The Debtor also requests that any property left on the Clermont Premises be deemed abandoned because such property is of inconsequential value to the estate, or the cost of the Debtor of retrieving, marketing and reselling the property will exceed the recoveries that the Debtor might be able to obtain in exchange for such property.  Section 554(a) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, the [debtor] may abandon any property of the

estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) ("[A trustee] may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim."). The right to abandon property is virtually unfettered, unless: (a) abandonment of the property will contravene laws designed to protect public health and safety; or (b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). None of these limitations apply to this case.

12. With respect to the Pitney Bowes Lease, the Debtor seeks to reject such lease because the Debtor has downsized and streamlined operations, no longer utilizes the postage machine, and seeks to avoid incurring any additional administrative expenses relating to leasing the postage machine.

13. The Debtor further requests that the Court schedule the deadline for filing any proof of claim for damages arising from the rejection of the Clermont Lease and Pitney Bowes Lease as on or before thirty (30) days after the entry of an Order granting the Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order: i) granting the Motion; ii) approving the Debtor's rejection of the Clermont Lease and the Pitney Bowes Lease effective as of the Rejection Date pursuant to 11 U.S.C. § 365(a) and (d); iii) providing that any proof of claim for damages arising from the rejection of the Clermont Lease and Pitney Bowes Lease be filed with the Court on or before thirty (30) after the entry of an Order granting the Motion; and iv) granting the Debtor any such further relief as the Court may deem just and proper.

Respectfully submitted,

SHRAIBERG, LANDAU, & PAGE, P.A.
Attorney for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bshraiberg@slp.law
blee@slp.law

By: /s/ Bradley S. Shraiberg _____
      Bradley S. Shraiberg
      Florida Bar. No. 121622
      Bernice C. Lee
      Florida Bar No. 0073535

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via CM/ECF Electronic Noticing to those parties registered to receive electronic noticing in this case on this the 24th day of July, 2019.

By: /s/ Bradley S. Shraiberg _____
      Bradley S. Shraiberg

# EXHIBIT A

## LEASE MODIFICATION AGREEMENT NO. 5

THIS LEASE MODIFICATION AGREEMENT NO. 5 (this "**Agreement**") is made effective this 16th day of November_____, 2016 (the "**Effective Date**"), by and between LUCAS CLERMONT LIMITED PARTNERSHIP, an Ohio limited partnership, as landlord (the "**Landlord**") and FRESH ALTERNATIVES LLC, a Delaware limited liability company, as tenant (the "Tenant"), d/b/a Crispers.

### RECITALS:

**A.**      Landlord and Tenant, successor-in-interest to Crispers, LLC, successor-in-interest to Crispers, Inc., successor-in-interest to B & V Restaurant, Inc., are parties to a Lease Agreement dated October 26, 1999, as modified by Amendment to Lease dated January 25, 2000, Assignment of Lease effective August 12, 2002, Second Amendment to Lease Agreement dated November 15, 2004, Lease Modification Agreement No. 3 dated April 29, 2010, Lease Modification Agreement No. 4 dated December 1, 2010, Assignment of Lease effective July 31, 2011and Option 1 exercise letter agreement executed December 9, 2011 (collectively, the "**Lease**") for the premises demised to Tenant pursuant to and more particularly described in the Lease (the "**Premises**") presently identified as Spaces 1748-1760 (1748 E. Highway 50), having approximately 4,800 square feet of Leasable Area, and situated in Lake County, Florida, in the City of Clermont at the Shopping Center identified in the Lease, commonly known and referred to as Clermont Town Center.

**B.**      Landlord and Tenant desire and intend to modify and amend the Lease as hereinafter set forth in this Agreement.

**NOW, THEREFORE,** for and in consideration of the premises and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto intending to be legally bound hereby, agree as follows:

1. *__Recitals.__*   The above recitals are true and correct and are incorporated into this Agreement by reference.

2. *__Current Term; Option 2 Exercised.__*

**A.**      **Current Term** - The current term of the Lease (i.e., the Option 1 Renewal Term) is set to expire April 30, 2017.

**B.**      **Option 2 Exercised** – Tenant hereby exercises Option 2 (i.e., the second option to extend the term of the Lease by five (5) years as per Sections 1.01(P) and 24.11 of the Lease and Section 4 of Lease Modification Agreement No. 4).  The parties hereby acknowledge and agree that pursuant to such exercise (i) the term of the Lease shall be extended for the five (5) years' Option 2 Renewal Term, through April 30, 2022, and (ii) Tenant has no other or further right or option to extend or renew the Lease.

3. *__Minimum Rent.__*   The Lease is hereby modified to provide that the annual Minimum Rent payable by Tenant for the Option 2 Renewal Term shall be as set forth below.

| | Period | Annual Minimum Rent Rate per sq. ft. of Premises Leasable Area per Annum | Annual Minimum Rent (based on 4,800/sf) | Monthly Installments |
|---|---|---|---|---|
| **Option 2 Renewal Term** | 05/01/17 - 04/30/22 | $14.00* | $67,200.00 | $5,600.00 |

*As of the Effective Date of this Agreement the Shopping Center premises formerly operated as a Sweetbay Supermarket is closed for business. If 15,000 sq. ft. minimum of the former Sweetbay premises ("**M/R Escalation Co-Tenancy Premises**") opens for business to the public in the Option 2 Renewal Term, then upon the date of such opening the annual Minimum Rent rate shall escalate to $16.00 per sq. ft. Additionally, if M/R Escalation Co-Tenancy Premises is open for three hundred sixty-five (365) days in the Option 2 Renewal Term ("**1 Year Period**") then thereafter and for the balance of the Option 2 Renewal Term the annual Minimum Rent rate

11/16/16                                                    1

shall escalate to $17.50 per sq. ft. Upon Tenant's receipt of written request from Landlord Tenant agrees to execute a written modification of this Lease prepared by Landlord reflecting the same. Notwithstanding anything above in this paragraph to the contrary, if the M/R Escalation Co-Tenancy Premises requirement has been satisfied (and annual Minimum Rent rate has been stepped up to $16.00 per sq. ft. or $17.50 per sq. ft. as the case may be) but later in the Option 2 Renewal Term is unsatisfied (a "**Deficiency**") and the Deficiency persists for ninety (90) consecutive days ("**90 Days' Period**"), then thereafter, but provided Tenant at all times has remained continuously open and operating as required and free of event of default beyond any applicable cure period and has given Landlord written notice of the Deficiency within thirty (30) days after such 90 Days' Period delivered together with comparable Gross Sales reports i) for the 90 Days' Period  and ii) for the same ninety (90) days in the prior year both certified by an officer of Tenant ("**Comp Sales Reports**") with such Comp Sales reports evidencing a greater than twenty percent (20%) decline in Gross Sales (collectively, "**Deficiency Notice**") then thereafter, as of the 1st day of the calendar month after Deficiency Notice is properly given, the annual Minimum Rent rate shall step down to $14.00 per sq. ft. until M/R Escalation Co-Tenancy Premises opens for business to the public at which time the annual Minimum Rent rate shall step up to $16.00 per sq. ft. and after a 1 Year Period shall step up to $17.50 per sq. ft. (i.e., if  Option 2 Renewal Term hasn't expired before); otherwise, the annual Minimum Rent rate shall not step down and Tenant's rights and remedies with respect to the Deficiency, if any, shall be deemed waived.

4.  ***Representations.***   Tenant represents and warrants that it has taken all corporate, partnership or other action necessary to execute and deliver this Agreement, and that this Agreement constitutes the legally binding obligation of Tenant enforceable in accordance with its terms. Tenant shall save and hold Landlord harmless from any claims, or damages including reasonable attorneys' fees arising from Tenant's misrepresentation of its authority to enter into and execute this Agreement.  Tenant represents and warrants that there are no actions, whether voluntary or otherwise, pending against Tenant pursuant to the bankruptcy or insolvency laws of the United States or any state thereof.

Landlord represents and warrants that it has taken all corporate, partnership or other action necessary to execute and deliver this Agreement, and that this Agreement constitutes the legally binding obligation of Landlord enforceable in accordance with its terms. Landlord shall save and hold Tenant harmless from any claims, or damages including reasonable attorneys' fees arising from Landlord's misrepresentation of its authority to enter into and execute this Agreement.  Landlord represents and warrants that there are no actions, whether voluntary or otherwise, pending against Landlord pursuant to the bankruptcy or insolvency laws of the United States or any state thereof.

5.  ***Conflict.***  To the extent of any conflict between the terms and provisions of the original Lease and the terms and provisions of this Agreement, the terms and provisions of this Agreement shall prevail.

6.  ***Ratification.***   Except as otherwise expressly amended herein, all other terms and conditions of the Lease shall remain unchanged and in full force and effect and are incorporated herein by reference. As modified and amended hereby, Landlord and Tenant each ratifies and affirms the terms of the Lease.

7.  ***Certification.***  Tenant certifies to Landlord that, as of the date hereof, the Lease, as modified hereby, contains the entire agreement between the parties hereto relating to the Premises and that there are no other agreements between the parties relating to the Premises, the Lease or the Shopping Center which are not contained herein or in the Lease.

8.  ***Capitalized Terms.***   Undefined capitalized terms used herein shall have the respective meanings given such terms in the Lease.

9.  ***Counterparts.***   This Agreement may be executed in several counterparts, each of which shall be deemed an original.  The signatures to this Agreement may be executed and notarized on separate pages, and when attached to this Agreement, shall constitute one complete document.

**(signatures of parties on next page)**
**(balance of this page intentionally left blank)**

**IN TESTIMONY WHEREOF**, the parties hereto have executed this Agreement under their respective hands and seals as of the day and year first above written.

Signed and acknowledged in the presence of:

_Helena Brus_
(Sign Witness Name)
HELENA BRUS
(Print)

_Cynthia P. Askey_
(Sign Witness Name)
Cynthia P Askey
(Print)

**LANDLORD:**

LUCAS CLERMONT LIMITED PARTNERSHIP,
an Ohio limited partnership

By: Casto Clermont Corporation,
        an Ohio corporation, General Partner

By: _____

(Name:) Don M. Casto, III

(Title:) President

Signed and acknowledged in the presence of:

_Laura Belford_
(Sign Witness Name)
LAURA BELFORD
(Print)

_Scott Anderson_
(Sign Witness Name)
Scott Anderson
(Print)

**TENANT:**

FRESH ALTERNATIVES, LLC,
a Delaware limited liability company

By: _____

Name: Calvin C Sellers III

Title: Chief Financial Officer

(acknowledgments next page)
(balance of this page intentionally left blank)

11/16/16                                                    3

## ACKNOWLEDGMENT AS TO LANDLORD

**STATE OF OHIO**
**COUNTY OF FRANKLIN**

The foregoing instrument was signed before me on this _18th_ day of _November_, 2016, by (Name:)_Don M Casto III_ in his/her capacity as (Title:)_President_ of Casto Clermont Corporation, on behalf of the corporation, in its capacity as general partner to LUCAS CLERMONT LIMITED PARTNERSHIP, an Ohio limited partnership.

_✓_ Personally Known  OR  _____ Provided Identification
Type of Identification Provided

_Helena Brus_
Notary Public
Printed Name:
My Commission Expires:
Commission No.

NOTARIAL SEAL
STATE OF OHIO

HELENA BRUS
Notary Public, State of Ohio
My Commission Expires 09-14-2021

## ACKNOWLEDGMENT AS TO TENANT

**STATE OF FLORIDA**
**COUNTY OF _Polk_**

The foregoing instrument was signed and acknowledged before me on this _16th_ day of _November_ 2016, by (Name:)_Calvin Sellers III_, as (Title:)_Chief Financial Officer_ of FRESH ALTERNATIVES, LLC, a Delaware limited liability company, on behalf of the company.

_✓_ Personally Known  OR  _____ Provided Identification
Type of Identification Provided _____

_Vickie J Humphrey_
Notary Public
Printed Name
My Commission Expires:
Commission No.

Notary Public State of Florida
Vickie J Humphrey
My Commission FF 130548
Expires 07/05/2018

11/16/16                                    4

# EXHIBIT B

pitney bowes

## Lease Agreement Client Privilege

Agreement Number

### Your Business Information

| Full Legal Name of Lessee / DBA Name of Lessee | | | Tax ID # (FEIN/TIN) |
|---|---|---|---|
| CRISPERS LLC | | | 820555311 |

**Sold-To: Address**

1476 TOWN CENTER DR, LAKELAND, FL, 33803-7971, US

| Sold-To: Contact Name | Sold-To: Contact Phone # | Sold-To: Account # | |
|---|---|---|---|
| CRISPERS LLC. | 8636462102 | 1662 | |

**Bill-To: Address**

1476 TOWN CENTER DR, LAKELAND, FL, 33803-7971, US

| Bill-To: Contact Name | Bill-To: Contact Phone # | Bill-To: Account # | Bill-To: Email |
|---|---|---|---|
| CRISPERS LLC. | 8636462102 | 1662 | maria.cosimo@crispers.com |

**Ship-To: Address**

1476 TOWN CENTER DR, LAKELAND, FL, 33803-7971, US

| Ship-To: Contact Name | Ship-To: Contact Phone # | Ship-To: Account # | |
|---|---|---|---|
| CRISPERS LLC. | 8636462102 | 1662 | |

**PO #**

### Your Existing Lease

| Existing Lease # | Schedule # |
|---|---|
| B228494002 | |

### Your New Lease

We are proud to extend our loyalty offer to you, effective on the day following the expiration date of your existing lease, if this lease is entered during the initial lease term of your existing lease, or on the first day of the next billing period, if this lease is entered during a monthly renewal term of your existing lease (said day is called the "Effective Date"). This opportunity is only being offered to a select group of our long-term clients. If your current equipment meets your needs, simply acknowledge your acceptance by agreeing to the new lease terms outlined below.

| Billing Frequency | New Monthly Payment | Number of Months | |
|---|---|---|---|
| Quarterly | $ 36.00 | 24 | |

Except as otherwise provided above, all of the terms and conditions of your existing lease and all other related obligations (including those related to the ValueMAX® program, if applicable, which requires you to provide proof of insurance at www.pitneybowes.com/us/valuemaxoptout or participate in the program) are fully incorporated in this lease by reference, and Pitney Bowes Global Financial Services LLC, as lessor, agrees to lease the equipment to you under such terms and conditions, commencing on the Effective Date at the monthly payment and billing frequency and for the term noted above. You have the right to upgrade, buyout or maintain your current position in your existing equipment if your needs change prior to five months before the commencement of this lease.

US144064.4   06/17
©2017 Pitney Bowes Inc. All rights reserved.
Doc ID: 20180416085021165
Sertifi Electronic Signature

Page 1 of 2

Y100599855
See Pitney Bowes Terms for additional terms and conditions

**Your Signature Below**

By signing below, you agree to be bound by all the terms of this Agreement and the terms and conditions of your existing Lease, all of which are incorporated by reference. You acknowledge that you may not cancel this lease for any reason and that all payment obligations are unconditional. This lease will be binding on us after we have completed our credit and documentation approval process and have signed below.

E-Signed 1 04/16/2018 10:44 AM EDT

*Maria Cosimo*

maria.cosimo@crispers.com
Title: Controller
IP: 67.78.153.98
                              Serial Electronic Signature
                              DocID: 20180416085021165

| | |
|---|---|
| Lessee Signature | Pitney Bowes Signature |
| Print Name | Print Name |
| Title | Title |
| Date | Date |
| Email Address | |

**Sales Information**

| | |
|---|---|
| Bonnie Evans | bonnie.evans@pb.com |
| Account Rep Name | Email Address |